**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| DAVID C. DORRIES | CIVIL ACTION NO. 05-0844 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HARRAH'S SHREVEPORT/BOSSIER CITY HOLDING COMPANY, L.L.C. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Record Document 12) filed by the Defendant Harrah's Shreveport/Bossier City Holding Company, L.L.C. ("Harrah's"). Harrah's argues that it is not "facially apparent" from Plaintiff David C. Dorries' ("Dorries") complaint that his claims exceed the requisite jurisdictional amount of $75,000. Dorries opposes the motion to dismiss. See Record Document 14. For the reasons which follow, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Record Document 12) is **GRANTED**.

**I.     BACKGROUND.**

On May 18, 2004, Dorries and a guest were patrons at the video poker casino at Harrah's Louisiana Downs in Bossier City, Louisiana. Dorries was playing video poker and drinking beer. At approximately 5:00 p.m., employees of Harrah's Louisiana Downs perceived Dorries to be intoxicated and informed him that he was being "cut off" from further drinking. According to Dorries, he told the employees that he would leave the casino voluntarily, and he began walking from the video poker machine towards the exit. Conversely, the employees recall that Dorries began running through the casino and out into the atrium of the building. This factual dispute is neither material nor determinative of

the instant Motion to Dismiss, as the motion concerns jurisdiction, not liability. Further, there is no dispute that Dorries ended up face down on the sidewalk just outside of the revolving door exit. Dorries alleges that he was kept on the ground for 20 minutes. Dorries sustained minor physical injuries, including abrasions, a black eye, swelling, and bruising. Dorries also complains of severe emotional distress.

As a result of the May 18, 2004 incident at Harrah's Louisiana Downs, Dorries was arrested for disturbing the peace (drunk in public)[1] and two counts of simple battery.[2] See Record Document 12, Exhibit 1. He was released from jail around midnight. See id., Exhibit 4 at 115-116. On December 7, 2004, Dorries plead no contest to disturbing the peace (drunk in public). See id., Exhibit 2. His sentence included a $75.00 fine, 60 days incarceration (suspended), and one year unsupervised probation with the special condition that he not return to Harrah's Louisiana Downs. See id. On July 25, 2006, Judge Thomas A. Wilson, Jr. of the Bossier City Court entered an Order of Expungement, directing that the aforementioned charges be annulled, cancelled, rescinded and forever expunged.

Dorries filed suit on May 17, 2005 and later filed an amended complaint on August 24, 2005. See Record Documents 1 & 3. Dorries alleges that agents and/or employees of Harrah's negligently caused him injuries and specifically seeks the following damages:

---

[1] La. R.S. 14:103, in pertinent part, states:

A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

(3) Appearing in an intoxicated condition.

[2] La. R.S. 14:35 defines simply battery as "a battery committed without the consent of the victim."

(1) past and future pain and suffering; (2) past and future embarrassment; (3) past and future humiliation; (4) past and future loss of reputation; (5) past and future mental anguish and emotional distress; (6) loss of enjoyment of life; (7) loss of wages; (8) loss of earning capacity; (9) past and future medical expenses; and (10) expert witness fees and other costs of investigation and prosecution of this matter. See Record Document 3, ¶ 20. Harrah's answered on January 18, 2006, denying Dorries' allegations and alleging that Dorries failed to state a claim upon which relief can be granted. See Record Document 4. On September 18, 2006, Harrah's filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that Dorries has failed to meet his burden of proving that the actual amount in controversy in this case exceeds $75,000.00. See Record Document 12.

## II. LAW AND ANALYSIS.

### A. Subject Matter Jurisdiction.

In his complaint, Dorries stated that "this Court has jurisdiction over this cause under 28 U.S.C. § 1332 in that the matter is between citizens of different states and the amount in controversy exceeds $75,000.000." Record Document 1, ¶ 2. Title 28, United States Code, Section 1332(a)(1) states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

Here, Harrah's is not disputing diversity of citizenship. Rather, Harrah's is challenging whether the amount of damages claimed in good faith by Dorries exceeds $75,000. The Fifth Circuit has remarked that the majority of its case law regarding Section 1332's amount in controversy requirement involves removal cases; yet, the Fifth Circuit has

reasoned that such procedures are also instructive in the context of declaratory judgment actions. See St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). Following this same rationale, this Court will apply the Fifth Circuit's guidance regarding Section 1332's amount in controversy requirement, as set forth in removal practice, in the instant matter.

"The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." Id. Generally, any specific sum claimed by a plaintiff controls if such claim is made in good faith. In order to justify dismissal, courts must find with legal certainty that the claim is really for less than the jurisdictional amount. See id. However, in cases where the plaintiff has not alleged a determinate amount of damages, the Fifth Circuit has held that "the 'legal certainty' test has limited utility-in fact." Id. Moreover, bare allegations of jurisdictional facts are insufficient to invest a federal court with subject matter jurisdiction. See id. Federal courts must "give due credit to the good faith claims of the plaintiff"; however, courts would be remiss if they "accepted every claim of damages at face value, no matter how trivial the underlying injury." Diefenthal v. C. A. B., 681 F.2d 1039, 1052 (5th Cir. 1982) (internal citations omitted). Such rationale is especially true after a party has challenged jurisdiction. See id. Simply put, "jurisdiction is not conferred by the stroke of a lawyer's pen" and "when challenged, it must be adequately founded in fact." Id.

In a case such as the instant matter, where the complaint does not allege a specific amount of damages, Dorries must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. See St. Paul Reinsurance Co., Ltd., 134 F.3d at 1253. This Court must first examine the complaint to learn "whether it

is 'facially apparent' that the claims exceed the jurisdictional amount." Id. "If it is not thus apparent, the [C]ourt may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." Id.

### B. Legal Standard Applied to the Instant Matter.

In his complaint, Dorries alleges that as a result of negligent and intentional tortious acts of Harrah's agents and/or employees, he "suffered personal injuries including abrasions to the right cheek and temple area; a severe black eye on the left side with swelling and an abrasion on the left cheek and temple and above the left eye; bruising and swelling and scrapes on the left elbow; swelling and abrasions on the right knee; bruising on the left shoulder; discoloration and bruising on the right elbow; welts and bruising on the upper right bicep" and that he "incurred medical costs associated with the treatment of these injuries" (Record Document 1, ¶¶ 17-18). Dorries specifically listed non-exclusive items of damage in this complaint: "(a) past and future pain and suffering; (b) past and future embarrassment; (c) past and future humiliation; (d) past and future loss of reputation; (e) past and future mental anguish and emotional distress; (f) loss of enjoyment of life; (g) loss of wages; (h) loss of earning capacity; (i) past and future medical expenses; and (j) expert witness fees and other costs of investigation and prosecution of this matter.[3] See Record Document 3, ¶ 20. Dorries provides no explanation as to this list of damages and simply declares that he is "entitled to judgment against Louisiana Downs for all damages suffered by plaintiff in an amount in excess of $75,000.00." Record Document

---

[3]Counsel for Dorries has made continuous bare and conclusory allegations as to the claim for expert witness fees and other costs of investigation and prosecution of this matter; yet, Dorries has not submitted any proof thereof.

1, ¶ 22.

Based on Dorries' complaint, this Court finds that it is not facially apparent that his claims exceed $75,000. See St. Paul Reinsurance Co., Ltd., 134 F.3d at 1253. The allegations in the complaint evidence only minor physical injuries and do not indicate any long-lasting and/or permanent physical injuries. The remaining claims for damages based on embarrassment, humiliation, loss of reputation, mental anguish and emotional distress, loss of enjoyment of life, loss of wages, loss of earning capacity, and past and future medical expenses are bare and conclusory allegations with no explanation. Accordingly, because it is not facially apparent from Dorries' complaint that his claims exceed $75,000, the Court will now proceed to an examination of "'summary judgment-type' evidence to ascertain the amount in controversy." St. Paul Reinsurance Co., Ltd., 134 F.3d at 1253.

The Court will first examine Dorries' claims for special damages - past and future medical expenses, lost wages, and loss of earning capacity. In response to discovery requests, Dorries identified only $1,922.00 in medical expenses. See Record Document 12, Exhibit 3, Answer to Interrogatory No. 11. This amount included $720.00 for EMS services and $1,202.00 for emergency room services. See id., Exhibit 4 at 24-25 & Exhibit 5 at 0019. Dorries has presented no evidence that he sought medical treatment for any physical injuries after the day of the May 2004 incident. During his deposition, Dorries also identified $330.00 in additional medical expenses for three counseling sessions in March-May 2005 with Dr. Patrick O'Malley, Ph.D., P.C. See id., Exhibit 4 at 131 & Exhibit 7. Thus, Dorries' total medical expenses total $2252.

In his deposition, Dorries gave key testimony regarding his claims for lost wages and loss of earning capacity. As to lost wages, Dorries, a college professor at Tarrant County

Community College, seems to claim that he could have taught summer school in the summer of 2004, but that he chose not to teach because of his appearance due to the incident at Harrah's Louisiana Downs. See Record Document 12, Exhibit 4 at 20-21. Yet, in his deposition, Dorries admitted that no one at the school told him he could not teach summer school in 2004 due to his appearance; he had not taught summer school in 2002, 2003, 2005, and 2006; and that it had been a "few years" since he had taught summer school. See id. at 21. Further, Dorries stated that he had told school officials that he did not want to teach summer school prior to the May 18, 2004 incident at Louisiana Downs. See id. at 23.

As to the loss of earning capacity claim, Dorries stated in his deposition that he probably had not lost his ability to earn income in the future. See id. at 10. When asked specifically how the May 18, 2004 incident had tarnished his ability to earn income in the future, Dorries stated:

> If any of my colleagues or students were aware of this, I think I would be so embarrassed that I would – must resign – retire.

Id. at 11. Yet, Dorries also stated that he did not believe he would be forced to retire or be terminated if his colleagues or students were aware of the May 2004 incident. See id. Dorries further stated that none of his colleagues were aware of the incident and that he knew of no reason why he would voluntarily retire any time in the near future. See id. at 12. Moreover, Dorries' age, 76 at the time of his deposition, also makes any loss of earning capacity claim minimal.[4] Based on this reasoning, the Court finds that Dorries'

---

[4] During his deposition, Dorries mentioned a possible brain injury that may cause him to retire. See Record Document 12, Exhibit 4 at 13. However, the record evidence shows that any possible brain injury was not caused by the May 2004 incident, as the CT scan

claims for special damages do not fulfill the $75,000 requisite jurisdictional amount.

The Court now moves to general damages, as Dorries has failed to show by a preponderance of the evidence that his claims for special damages exceed the requisite jurisdictional amount. See St. Paul Reinsurance Co., Ltd., 134 F.3d at 1253. In his deposition, Dorries admitted that he had not "sustained any loss" for past and future loss of reputation. See Record Document 12, Exhibit 4 at 31. Dorries stated that unless the May 2004 incident became widely known at the Tarrant County Community College, where he is employed, then he will not sustain any past and future loss of reputation. See id.

Dorries' special damages claim for past and future physical pain and suffering is, at most, minimal. Dorries was treated by EMS at the scene of the incident for an one inch laceration about his left eye. See Record Document 12, Exhibit 6 at 0002. He was transported to the emergency room and treated for "left eyebrow laceration" and "closed head injury." See id., Exhibit 5 at 0010. Yet, as stated previously, there is no evidence in the record that Dorries suffered any kind of brain injury. After his initial visit to the emergency room, Dorries was not treated by any other health care provider for the physical injuries associated with the May 2004 incident. In his deposition, Dorries outlined his physical injuries, including bruised elbows that never bled and that took four to six weeks to heal. See Record Document 12, Exhibit 4 at 74-77. Dorries also described a sore right arm that lasted about two months. See id. at 75. He also recalled this his knees were

---

performed on the day of the incident showed an old injury that pre-dated the incident. See id. at 14. Further, Dorries has presented no evidence that a doctor or other medical professional has indicated to him that the May 2004 incident affected his brain or his memory. See id. at 16 & 19. Likewise, fainting spells that Dorries suffered both before and after the May 2004 incident have never been connected to the incident at issue in this case. See id. at 18.

bruised (no bleeding) and that his knees were sore for about four to six weeks. See id. at 77-78. Dorries also described the cut about his left eye, which did bleed, and recalled that he developed bruising under his left eye. See id. at 79-81. He also stated that he had a black eye for about a week and sustained a minor burn on his face that lasted until sometime in June 2004. See id. at 83. Clearly, Dorries' physical pain and suffering was minor and his injuries healed quickly, i.e., in no more than six weeks.

As to his claims for embarrassment, humiliation, mental anguish, and emotional distress, Dorries points to his three counseling sessions with Dr. O'Malley as evidence of severe emotional distress. Dorries has presented the report of Dr. O'Malley, which states:

> David Dorries began counseling on March 15, 2005 in response to symptoms resulting from an incident at a casino the previous May. He described ongoing symptoms of anxiety and periodic sleeplessness. He described significant embarrassment from the incident. He described ongoing reactions consistent initially with Acute Stress Disorder and Post-Traumatic Stress Disorder.
>
> His affect was worrisome and his mood state was depressed and anxious.
>
> Mr. Dorries followed the suggestions made in the sessions and consequently began to experience some relief from his symptoms. Mr. Dorries was not symptom free at the termination point in counseling but believed he has gained sufficient help to discontinue sessions.

Id., Exhibit 7. Counsel for Dorries argues that this report evidences a diagnosis of Acute Stress Disorder and Post-Traumatic Stress Disorder. Yet, Harrah's argues, and this Court agrees, that Dr. O'Malley's report is not a diagnosis. In Dorries' medical records, Dr. O'Malley made a Diagnostic and Statistical Manual of Mental Disorders Axis I and Axis II notation of "V71.09," which means "no diagnosis." Id., Exhibit 7 at 0034; Exhibit 8 at 687 & 812. Under Axis IV, Dr. O'Malley made no Diagnostic and Statistical Manual of Mental Disorders recognized code, but rather entered the phrase "stress response." Id., Exhibit

7 at 0034. Based on the aforementioned medical records and the other competent summary judgment-type evidence in the record, the Court finds that Dorries' claims for embarrassment, humiliation, mental anguish, and emotional distress are minimal and simply do not even approach the level of $75,000. The first line of "physical injury with emotional distress" cases cited by Dorries involved significantly greater levels of mental anguish and emotional distress than suffered by Dorries. Even in those cases, the damages awarded for mental anguish and emotional distress were well below $75,000. See Thomas v. City of St. Martinville, 611 So. 2d 678 (La. App. 3 Cir. 1992), Berthelot v. Aetna Cas. & Sur. Co., 623 So. 2d 14 (La. App. 1 Cir. 1993), & Dush v. State, 663 So. 2d 363 (La. App. 3 Cir. 1995), *writ denied,* 666 So. 2d 321 (La. 1996). In other cases cited by Dorries, the physical injuries accompanying the emotional distress and the treatment rendered were much more significant than those of Dorries. See Saucier v. Players Lake Charles, LLC, 751 So.2d 312 (La. App. 3 Cir. 1999) (plaintiff suffered a strained shoulder, biceps tendon rupture, and partial tear of the rotator cuff with pain that continued up to the trial two years later; plaintiff claimed that the physical limitation from the injuries caused him to become a broken spirited person; and based these injuries, the court of appeals awarded $150,000.); Bryan v. City of New Orleans, 737 So.2d 696 (La. 1999) (award of $90,000 in case involving 684 past psychiatric/counseling sessions; the need for future psychiatric expenses; and a diagnosis of rhabdomyolysis, the destruction of muscle tissue accompanied by the release of oxygen-carrying red muscle pigment myoglobin into the blood.).

Even if this Court combines the $2,252 in medical expenses, a minimal claim for past and future physical pain and suffering, and a minimal claim for embarrassment,

humiliation, mental anguish and emotional distress, Dorries has failed to meet his burden of establishing subject matter jurisdiction by a preponderance of the evidence. His bare allegations of jurisdictional facts are not sufficient. This Court would be remiss to accept such facts as a basis for subject matter jurisdiction. The Court finds with legal certainty that the minimal claims for medical expenses, past and future physical pain and suffering, and embarrassment, humiliation, mental anguish, and emotional distress are really for less than the requisite jurisdictional amount set forth in Section 1332. Accordingly, the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Harrah's is **GRANTED**.

### III. CONCLUSION.

Based on the foregoing, the Court finds that Plaintiff David C. Dorries has failed to establish by a preponderance of the evidence that the amount in controversy in the instant matter exceeds $75,000, as required by Title 28, United States Code, Section 1332. Accordingly, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Record Document 12) filed by the Defendant Harrah's Shreveport/Bossier City Holding Company, L.L.C. is **GRANTED**. Plaintiff David C. Dorries' claims are **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of October, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE